UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~

DESIREE YAGAN,
                                        Plaintiff,

            vs.                                    5:08-CV-1176
                                                   (DNH/GJD)

SYRACUSE CITY COURT JUDGES FIFTH
JUDICIAL DISTRICT; ALL JUDGES WITHIN
THE FIFTH JUDICIAL DISTRICT; STEPHEN
DOUGHERTY, Judge; SALVATORE PAVONE,
Judge; JAMES CECILE, Judge; KEVIN YOUNG,
Judge; LANGSTON McKINNEY, Judge;
WILLIAM FITZPATRICK, District Attorney;
ONONDAGA COUNTY PROSECUTOR;
JAMES TORMEY, Judge; and JEFFREY
MERRILL, Judge,
                                        Defendants.

~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~

APPEARANCES:                         OF COUNSEL:

DESIREE YAGAN
Plaintiff, *pro se*

DAVID N. HURD
United States District Judge

## DECISION and ORDER

        On November 3, 2008, *pro se* plaintiff, Desiree Yagan ("Yagan" or "plaintiff"),

filed what she has labeled, "Ex parte TRO Motion and Affidavit in Support of TRO 3-Judge

Court." (Dkt. No.1).  Plaintiff has filed an application to proceed *in forma pauperis* (IFP).

(Dkt. No. 2).  Plaintiff has also filed approximately 200 pages of exhibits to her motion for a

TRO. (Dkt. Nos. 1, 6).

1. **Background**

A brief review into the background of this case is necessary in order to clarify the facts.  This is plaintiff's second attempt at bringing her *ex parte* TRO application.  On October 10, 2008, Yagan sent various documents by facsimile to the chambers of Chief Judge of the Northern District, Norman A. Mordue. *Yagan v. Fitzpatrick, et al.*, 08-CV-1100.  Plaintiff herself stated that the documents were "incomplete."  The papers were filed in an abundance of caution in order to protect the plaintiff, even though the court does not ordinarily accept documents sent by facsimile, and certainly does not accept documents sent directly to a judge's chambers, unless specifically authorized by the judge. Chief Judge Mordue issued an order dismissing the action without prejudice, stating that plaintiff should file a complete pleading and should not attempt to file papers by facsimile. (Dkt. No. 2, 08-CV-1100).  Plaintiff has now filed these motions.[1]

The TRO motion itself is five pages long and contains seventeen numbered paragraphs.  The plaintiff appears to have named all the City Court judges in the Fifth Judicial District, and "including all Judges within the Fifth Judicial District." (TRO at p.1). Plaintiff has also specifically named Judge Stephen Dougherty; Judge Pavone; Judge James Cecile; Judge Kevin Young; Judge James Tormey; Judge Jeffrey Merrill; and Judge Langston McKinney. *Id.*  Finally, Yagan has named William Fitzpatrick, Onondaga County Prosecutor.  Once again, the first paragraph of the motion states that plaintiff has

---

[1] It is noted that Chief Judge Mordue's order also stated that if plaintiff did file a complaint, 08-CV-1100 would be reopened, however, when plaintiff filed this motion, the case was randomly assigned to Judge Suddaby, who recused himself from considering plaintiff's complaint. (Dkt. No. 4).  Chief Judge Mordue has also recused himself from considering plaintiff's action. (Dkt. No. 5).  Thus, plaintiff's recent filing has been given a new number and is proceeding before the undersigned.

filed this action "incomplete," but that she has done so due to the threat of "false arrests." (TRO ¶ 1).  Yagan also requests a three judge court.

The TRO motion first states that plaintiff has "incontrovertible proof" that she was falsely arrested on April 11, 2006, because the bench warrant that was issued for her arrest was issued without a "supporting deposition." (TRO ¶¶ 2-3).  Plaintiff states that the bench warrant was "punitive, retaliatory, and illegal." *Id.*  Yagan spends the next five paragraphs of her motion attempting to explain why the 2006 bench warrant was improper. (TRO ¶¶ 4-8).  She claims that although the arrest was on April 11, 2006, the bench warrant was issued months before, and the execution of the warrant resulted in plaintiff being incarcerated for twenty-two hours. *Id.*

Plaintiff then states that another bench warrant was issued on the "very same simplified information" by Judge Kevin Young[2] on June 15, 2006. (TRO ¶ 9).  Although plaintiff states that the bench warrants are "attached," she does not specify to which exhibit she is referring; and in paragraph four of the motion, she states that the bench warrant is located at Exhibit B. (TRO ¶ 4).  However, no Exhibit B was filed with the initial TRO motion,[3] and the Exhibit B that was filed on November 5, 2008, is entitled "Motion to Recuse and Adjournment of Trial," dated October 10, 2006. Pl. Exh. B (Dkt. No. 6).

_____

[2] Plaintiff does not state which judge issued the first bench warrant.

[3] On November 3, 2008, plaintiff filed her motion with four exhibits, beginning with Exhibit E and ending with Exhibit H. (Dkt. No. 1).  On November 4, 2008, plaintiff called the Clerk's Office to alert the court that she would be filing additional exhibits.  On November 5, 2008, plaintiff filed a document labeled "Exhibit to Ex parte TRO." (Dkt. No. 6, Doc.1).  The document appears to be papers relating to an Article 78 proceeding that plaintiff brought before New York State Supreme Court Judge Deborah Karalunas.  Following this exhibit, which is not identified with a letter, plaintiff attached fifteen more exhibits, beginning with Exhibit A and ending with Exhibit O. *Id.* (Docs. 2-16).  The court notes that Exhibits E through H do not match the plaintiff's first set of Exhibits E-H that were filed in Docket No. 1.  There are two sets of Exhibits E-H, and thus, the first set will be labeled as Exhibit E-1 through H-1, and will ixhibits E-H that were filed with Docket No. 6 will be identified as Exhibit E-2 through H-2.

The next paragraph of the TRO motion is difficult to decipher, but apparently claims that a decision to "reverse (vacate)" one of plaintiff's convictions was "illegal." (TRO ¶ 10).  Although in the preceding paragraphs, plaintiff was referring to incidents in 2006, in paragraph ten, she states that it was error for Judge Jack Shultz not to "force" her to trial *pro se* on February 11, 2005. *Id.*  Plaintiff states that the action by Judge Shultz was deliberate and an abuse of discretion, taken because plaintiff posted a "legal notice" throughout Syracuse and DeWitt. *Id.*  Plaintiff describes this "legal notice" in paragraph 11.

Plaintiff states that "Associate Judge David Giden"[4] did not give plaintiff due process when he signed an "illegal . . . 730.40"[5] order to have plaintiff imprisoned for either two and one half or three months in CNYPC,[6] a "facility for the criminally insane." (TRO ¶ 12).  Plaintiff then states that the "egregious" constitutional violations are recited in detail in a "Motion to Unseal All Court Records." (TRO ¶¶ 13-14).  This motion to "unseal" does not appear to be attached to plaintiff's federal court papers.  Plaintiff states that she is under "severe duress," that is worsened by the fact that she has carpal tunnel syndrome, and that she is not able to prepare a "Proper TRO." (TRO ¶ 15).

In the next paragraph of her TRO, plaintiff states that the multitude of court documents that are attached to the TRO motion show that the "state courts pose grave and imminent threat of irreparable injury" to plaintiff. (TRO ¶ 16).  Plaintiff states that the

---

[4]  It is assumed that this is a typographical error, and that plaintiff is referring to Judge "Gideon," to whom she refers multiple times in her exhibits.

[5]  N.Y. Crim. Proc Law § 730.40 is among the sections of the New York Criminal Procedure law providing procedures to determine a defendant's fitness to proceed in a criminal action. *See id.* §§ 730.10, *et seq.*  Section 730.40 refers to procedures in "local criminal court."

[6]  Central New York Psychiatric Center.

Exhibit F that she filed on November 2, 2008 supports her claim of irreparable injury. (TRO, Exhibit F-1).  Exhibit F-1 is a letter, with exhibits, addressed to Judge Jeffrey Merrill, Supervising Judge of Syracuse City Court.  In the letter to Judge Merrill, plaintiff refers to what appears to be other cases against plaintiff that were scheduled to proceed to trial on October 31, 2008, and November 3, 2008. *Id.*

In the letter to Judge Merrill, dated October 29, 2008, it appears that plaintiff is asking for an adjournment of these cases "due to a series of converging . . . incidents that have occurred." *Id.*  Plaintiff states that these incidents have prevented her from seeking injunctive and declaratory relief in the United States District Court. *Id.*  The letter then complains about the inability to obtain records in Syracuse City Court, and states that she can no longer continue in State court. *Id.* at p.4.  Plaintiff states in her letter to Judge Merrill, that she attempted to show Judge Cecile the notice of her federal court action to "Enjoin the Fifth Judicial District (2 pages incomplete)." *Id.* at p.5.  Finally, plaintiff refers to various exhibits that she has attached to Judge Merrill's letter, including a copy of a complaint, dated December 9, 2006, that plaintiff sent to the United States Attorney's Office. *Id.* at p.4 & Exh. B to Merrill letter.

### 2.  *In Forma Pauperis* (IFP)

Plaintiff has filed an application to proceed IFP. (Dkt. No. 2).  Pursuant to 28 U.S.C. § 1915(a)(1), the court may authorize the commencement, prosecution, or defense of any suit, action or proceeding without the pre-payment of fees.  The individual seeking permission to proceed IFP must file an affidavit which includes a statement of all assets, showing that the individual is unable to pay the fees or give security therefor. Id.  The same section, however, states that this determination is "subject to subsection (b)." *Id.*

Subsection (b) provides that notwithstanding any filing fee or portion of the fee that may have been paid, the court shall dismiss the case at any time if the court determines that the allegation of poverty is untrue, or the action is (I) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must determine whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974).  To survive dismissal for failure to state a claim, "the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above a speculative level.'" *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)(quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007)).

In this case, although the Clerk provided plaintiff with a form-application to proceed IFP in 08-CV-1100, she has chosen to submit her own "affidavit" in support of the IFP motion.  Unfortunately, most of this document is devoted to making statements in support of her claims, rather than giving the court the appropriate information regarding her finances.  Plaintiff does manage to state that she has no income and must rely upon loans from her mother.  Plaintiff also states that she owes a substantial debt to Chase Bank. (Dkt. No. 2 at ¶¶ 13-14).  Based upon what is able to be gleaned from plaintiff's application, and for the purposes of this motion for *ex parte* relief, it is determined that

plaintiff is financially eligible to proceed IFP.  Therefore, plaintiff's motion will be considered.

### 3.  **Three Judge Panel**

Plaintiff states in the caption of her TRO motion that she is seeking a "3-Judge District Court."  Pursuant to 28 U.S.C. § 2284(a) a three-judge panel is convened when "otherwise required by Act of Congress" or when an action is filed challenging the apportionment of congressional districts or the apportionment of any statewide legislative body.  When an application for a three-judge panel is presented to the district court, the court must determine whether constitutional claim is substantial; whether the complaint alleges a basis for equitable relief; and whether the cases as presented otherwise comes within the statutory requirements. *Loeber v. Spargo*, 04-CV-1193, 2008 U.S. Dist. LEXIS 1416, *6 (N.D.N.Y. Jan. 8, 2008)(citing *Idlewild Liquor Corp. v. Epstein*, 370 U.S. 713, 715 (1962)(discussing a prior version of section 2284)).

Plaintiff in this case cites absolutely no reason for the court to convene a three-judge panel.  Although the motion is one for injunctive relief, it certainly does not involve apportionment of congressional districts or apportionment of any statewide legislative body.  As this court will discuss below, it is unclear what the plaintiff wishes this court to do, and plaintiff has not cited any other act of congress upon which she bases her claims that would require a three-judge panel to convene.  Thus, plaintiff's request for a three-judge panel is denied.

### 4.  **Injunctive Relief**

Although plaintiff does not specifically cite Fed. R. Civ. P. 65, she states that she is bringing an *ex parte* motion for a TRO.  Rule 65 governs applications for temporary

injunctive relief.  Rule 65 provides that the court may issue a temporary restraining order

without oral or written notice to the adverse party or its attorney only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that
> immediate and irreparable injury, loss, or damage will result to the
> movant before the adverse party can be heard in opposition; and
> (B) the movant's attorney verifies in writing any efforts made to give
> notice and why it should not be required.

Fed. R. Civ. P. 65(b)(1)(A) & (B).  Temporary restraining orders generally expire within ten

days of the order unless the court extends the time or the adverse party consents to an

extension. *Id.* 65(b)(2).

The standard for either a temporary restraining order or a preliminary injunction

is well-settled and requires a plaintiff to demonstrate irreparable harm, and either a

likelihood of success on the merits or sufficiently serious questions going to the merits

such as to make them a fair ground for litigation and a balance of hardships tipping

decidedly in the plaintiff's favor. *See Leibowitz v. Smith Barney*, 863 F. Supp. 171, 173

(S.D.N.Y. 1994)(citing *inter alia Local 1814, Int'l Longshoremen's Assn. AFL-CIO v. New

York Shipping Assn., Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992)).

Rule 65 also provides that every order granting an injunction shall, among other

things, be "specific in terms." Fed. R. Civ. P. 65(d).  In this case, a review of plaintiff's

motion shows that plaintiff states vehemently that she is under an imminent threat of

irreparable harm, but she does not state what she would like the court to enjoin.  Most of

her exhibits refer to alleged false arrests that she suffered in the past, as long ago as

2000, and as recently as 2006.  She is clearly not satisfied with the way that she has been

treated in state court, but even assuming that this court could grant an injunction in

plaintiff's situation, this court cannot "enjoin" actions that have already taken place.[7] Plaintiff seems to claim that since these actions took place in the past, she is in imminent danger that the state courts will take some action against her in the present, however, it is not clear what that action might be.

Plaintiff's submissions are substantial and confusing.  In her motion papers, plaintiff refers to Exhibit F as the basis for her claim of irreparable injury. Pl. Exh. F-1.  As stated above, this exhibit refers to city court criminal cases that appear to have a 2008 docket  number.  The letter in Exhibit F requests that Judge Merrill postpone plaintiff's trial that was set to occur on November 3, 2008 in front of Judge Cecile.  There is no indication what the charges were, although plaintiff states that at her last appearance before Judge Cecile, she asked him for a "stay" of the case and gave him notice that she had filed a "federal action to **enjoin the Fifth Judicial District**." Pl. Exh. F-1 at p.5 (emphasis added).

Plaintiff seems to take issue with the fact that the judges dismissed some of her previous criminal cases in the interests of justice, rather than allowing plaintiff to go to trial and prove that she was innocent.  Plaintiff claims that this procedure prevented her from filing false arrest charges because a dismissal in the interests of justice is not a judgment "in favor of the accused."  Some of the information gleaned from the main document in Docket No. 6, appears to consist of an Article 78 proceeding brought by plaintiff before New York State Supreme Court Justice Deborah Karalunas.  Plaintiff is complaining about

---

[7]  It is  noted that one of plaintiff's contentions is that the court granted a prosecution motion to dismiss plaintiff's criminal actions in the interests of justice.  Although plaintiff claims that this prevented her from filing a civil action for false arrest, it is unclear what this court can do at this point to rectify the situation.

a competency examination that she alleges she was forced to undergo for approximately

three months pursuant to section 730.40.  At one point in her papers, however, she states

that this examination was four years ago, thus, this cannot be the basis for a request for

injunctive relief.

Plaintiff may be attempting to show that since she has been treated so poorly by

the courts in New York State, this court should enjoin the entire Fifth Judicial District from

any actions regarding plaintiff.  Through the years, as evidenced by her exhibits, plaintiff

has apparently complained to the State courts, the United States Attorneys Office, and the

FBI. *See e.g.* Pl. Exhs. F-1 (Judge Merrill complaint with attachments A-C).

There are a variety of reasons why plaintiff's motion must be denied and the

action be dismissed with prejudice.  Judicial actors are absolutely immune from damage

actions under section 1983 for actions performed in their judicial capacities. *Mireles v.

Waco*, 502 U.S. 9, 11 (1991).  Although judges are not absolutely immune from actions for

prospective injunctive relief, under the Federal Courts improvement Act of 1996, injunctive

relief against a judicial actor is limited to situations in which a declaratory decree was

violated or where declaratory relief was unavailable. *Montero v. Travis*, 171 F.3d 757, 761

(2d Cir. 1999) (citing the Federal Courts Improvement Act of 1996, § 309(c), Pub. L. No.

104-317, 110 Stat. 3847, 3853 (1996)(amending 42 U.S.C. § 1983)).

In this case, plaintiff has cited no declaratory decree violated by any of the

judges specifically named in her exhibits, nor by any of the other judges in the entire Fifth

Judicial District; nor has she stated that declaratory relief was unavailable.  Additionally,

when considering whether the judge had the authority to take a particular action, the court

may consider any relevant statutes. *Root v. Liston*, 444 F.3d 127, 132 (2d Cir.

2006)(citation omitted).  The judges that dealt with this plaintiff's criminal case or cases, clearly had jurisdiction under New York Criminal Procedure Law to dismiss actions before them in the interests of justice and had jurisdiction to order a competency examination. N.Y. Crim. Proc. Law §§170.40 (motion to dismiss information, simplified traffic information, prosecutor's information or misdemeanor complaint in the interests of justice); 730.40 (giving local criminal court jurisdiction to order a competency evaluation).

Plaintiff is not asking for prospective declaratory relief since she has filed only for injunctive relief.  In any event, at this time, plaintiff would not be entitled to prospective declaratory relief.  Plaintiff's quest for declaratory or injunctive relief cannot rely on past injury to satisfy the injury requirement, but must show that they will be injured in the future. *LeDuc v. Tilley*, 05-CV-157, 2005 U.S. Dist. LEXIS 12416, *21-23 (D. Conn. June 21, 2005) (citations omitted).  Although plaintiff in this action believes that she is asking to be protected from future injury, she is attempting to base her claims upon allegations of past injuries.  Plaintiff also names all of the judges in the Fifth Judicial District, although **all** of the judges have not been involved with plaintiff.  "A 'hypothetical' or 'conjectural' threat of injury is insufficient to support a court-imposed injunction. *Chandler v. Sorrell*, 2008 U.S. Dist. LEXIS 40741, *25 (D. Vt. May 21, 2008)(citing *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)).

Because plaintiff has not stated an actual or imminent injury, she also lacks standing to bring this action.  The Constitution limits federal court jurisdiction to "Cases" and "Controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992).  In order to establish that plaintiff has standing, she must show that she suffered personal injury or threat of injury; the injury may be fairly traced to the action challenged; and the injury is

- 11 -

likely to be redressed by the requested relief. *Id.* at 560-61. *See also Fund for Animals v. Babbitt*, 89 F.3d 128, 134 (2d cir. 1996).  The problem that plaintiff has in this case is that her alleged injuries have already been sustained.  Although she appears to have some pending criminal actions in state court, she has not requested any particular relief from this court, and as stated above, there is nothing for this court to enjoin.

The relief that a plaintiff seeks by way of injunction must relate to the allegations in the underlying complaint. *Chavis v. Ryan*, 05-Cv-100, 2007 U.S. Dist. LEXIS 8729, *3-4 (N.D.N.Y. Feb. 7, 2007)(citation omitted).  Here, there is *no* underlying complaint.  Plaintiff has merely attached a myriad of complaints that she has made in *other* contexts, including a lengthy Article 78 proceeding before Supreme Court Justice Karalunas that contains many of the same allegations that she alludes to in her TRO motion.[8]  Because there is no underlying complaint, plaintiff cannot show either a likelihood of success on the merits of the underlying claim or an actual or imminent injury relating to any of the many defendants that she names.

Plaintiff also names William Fitzpatrick, the District Attorney of Onondaga County.  Again, plaintiff has not indicated what kind of injunctive relief she is requesting from this court, and thus, she has not fulfilled the requirements for obtaining injunctive relief from any of the defendants.  Like judges, prosecutors also enjoy absolute immunity from suit under section 1983 in matters associated with their prosecutorial functions, regardless of motivation. *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994)(prosecutorial immunity covers virtually all acts associated with the prosecutor's function, including

---

[8]  Plaintiff's Article 78 proceeding was much more detailed and understandable than the document that she filed in this action.

conspiracies to present false evidence); *Bernard v. County of Suffolk*, 356 F.3d 495 (2d Cir. 2004)(absolute immunity shields prosecutors from suit pursuant to section 1983 for their alleged malicious or selective prosecution as well as for any misconduct in the presentation of evidence to the Grand Jury).

Absolute immunity is defeated only when the prosecutor is engaging in investigative functions. *Bernard v. County of Suffolk*, 356 F.3d at 502-503 (citation omitted).  The initiation and pursuit of prosecution, regardless of any alleged illegality, is protected by absolute prosecutorial immunity. *Peay v. Ajello*, 470 F.3d 65, 67-68 (2d Cir. 2006).  It has also been held that a prosecutor is entitled to absolute immunity for his decision not to prosecute, regardless of the motivation for his or her decision. *Scloss v. Bouse*, 876 F.2d 287, 292 (2d Cir. 1989).  Although prosecutors are entitled to absolute immunity from damage actions, it does not resolve plaintiff's request for injunctive relief. *See Lewis v. City of New York*, 07 Civ. 7258, 2008 U.S. Dist. LEXIS 74123, *5 (S.D.N.Y. Sept. 16, 2008) (citing *Connecticut ex rel. Blumenthal v. Cahill*, 217 F.3d 93, 101 (2d Cir. 2000)).

Plaintiff's claim for injunctive relief for failure to state a claim on which injunctive relief may be granted pursuant to 28 U.S.C. § 1915(e)(2) (B)(ii) may still be dismissed, however.  Plaintiff does not mention defendant Fitzpatrick in her motion for injunctive relief.  Plaintiff's exhibits are replete with references to various Assistant District Attorneys, and plaintiff's exhibits appear to allege that her main problem with these individuals is that they moved to dismiss charges against her in an effort to prevent her from suing the police for false arrest.  Again, plaintiff refers to actions that have already occurred, and the court cannot determine what injunction would redress any of plaintiff's alleged injuries.  Thus,

although defendant Fitzpatrick may not necessarily be immune from injunctive relief,

plaintiff has not stated a claim for injunctive relief as against the District Attorney.

THEREFORE, it is

ORDERED, that

1.  Plaintiff's motion to proceed IFP (Dkt. No. 2) is GRANTED for purposes of

this motion;

2.  Plaintiff's motion for a TRO (Dkt. No. 1) is DENIED; and

3.  This action is DISMISSED pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

IT IS SO ORDERED.

Dated:   December 11, 2008
         Utica, New York.

_____
United States District Judge

- 14 -